Justice ERVIN
dissenting.
The majority has resolved this case based upon judicial estoppel considerations instead of the collateral estoppel and res judicata principles upon which the dissenting opinion in the Court of Appeals relied in determining that the trial court’s order should be upheld. Moreover, in holding that Hartford is judicially estopped from seeking relief from United Bank separate and apart from Helm, the majority assumes, without demonstrating, that (1) Hartford “collaterally attack[ed] the federal *509 judgment post hoc” and (2) attempted to “re-litigat[e] its related claims arising from the same facts.” On the contrary, the fact that two different parties have asserted that the same defendant committed the same torts in connection with the same overall transaction does not, at least in my opinion, mean that these parties have asserted identical claims in the event that those claims are supported by different facts. As a result, given that the dissenting opinion in the Court of Appeals, which provides the basis for our jurisdiction over this case, did not rely on judicial estoppel principles in upholding the trial court’s decision and my belief that the claims that Hartford seeks to assert against United Bank are fundamentally different from the claims that Helm asserted against that financial institution, I respectfully dissent from the Court’s decision with respect to the judicial estoppel issue.
Neither the majority nor the dissenting opinions in the Court of Appeals make any mention of judicial estoppel. Old Republic Nat'l. Title Ins. Co. v. Hartford Fire Ins. Co., — N.C. App. —, 785 S.E.2d 185 (2016). “When the sole ground of the appeal of right is the existence of a dissent in the Court of Appeals, review by the Supreme Court is limited to a consideration of those issues that are (1) specifically set out in the dissenting opinion as the basis for that dissent, (2) stated in the notice of appeal, and (3) properly presented in the new briefs required by Rule 14(d)(1)-N.C. R. App. R 16(b). Although “ ‘[t]his Court will not hesitate to exercise its rarely used general supervisory authority when necessary to promote the expeditious administration of justice,’ and may do so to ‘consider questions which are not properly presented according to [its] rules,’ ” State v. Ellis, 361 N.C. 200, 205, 639 S.E.2d 425, 428 (2007) (brackets in original) (quoting State v. Stanley, 288 N.C. 19, 26, 215 S.E.2d 589, 594 (1975)), I am not persuaded that we should do so in this case given the limited extent to which the parties addressed this subject in their briefs. As I read the record, United Bank mentioned the subject of judicial estoppel in an eight line footnote found on the last page of its principal brief in which it made the conclusory assertion that Hartford was not entitled to “represent to the court in the Prior Action that it was not a necessary party and would not collaterally attack the judgment entered in that action and then - three months after the jury verdict - assert identical claims premised on the same facts and issues actually litigated to a final judgment in the Prior Action.” (Citing Whitacre P’ship v. Biosignia, Inc., 358 N.C. 1, 21, 591 S.E.2d 870, 884 (2004)). Although Hartford addressed the judicial estoppel issue in more detail, it did little more than point out that the judicial estoppel issue had not been addressed in the dissenting opinion in the Court of Appeals and was not, for that reason, properly before the Court and to assert that, *510 since it was “prosecuting its own, independent Tort Claims,” it was not judicially estopped from pursuing those claims in this case. (Citing Price v. Price, 169 N.C. App. 187, 191, 609 S.E.2d 450, 452 (2005), and Whitacre P’ship, 358 N.C. at 29, 591 S.E.2d at 888-89)). As a general proposition, deciding an issue that has not been fully briefed and argued by the parties involves risks that I see no reason for the Court to take in this case. In addition, I am not persuaded, and the majority has not demonstrated, that a decision to address and resolve the judicial estoppel issue when it is not properly before us promotes the “expeditious administration of justice.” Ellis, 361 N.C. at 205, 639 S.E.2d at 428. As a result, I do not believe that we should deviate from our usual practice of refraining from deciding issues that are not properly before us. However, in light of the fact that I disagree with the majority’s decision with respect to the judicial estoppel issue as well, I will discuss the merits of the Court’s determination that Hartford is judicially estopped from pursuing the claims that it has asserted against United Bank.
The matter before the Court stems from the trial court’s decision to grant United Bank’s motion for judgment on the pleadings. “A motion for judgment on the pleadings is the proper procedure when all the material allegations of fact are admitted in the pleadings and only questions of law remain. When the pleadings do not resolve all the factual issues, judgment on the pleadings is generally inappropriate.” Ragsdale v. Kennedy, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974) (citation omitted). “The trial court is required to view the facts and permissible inferences in the light most favorable to the nonmoving party. All well pleaded factual allegations in the nonmoving party’s pleadings are taken as true and all contravening assertions in the movant’s pleadings are taken as false.” Id. at 137, 209 S.E.2d at 499 (citing, inter alia, Beal v. Mo. Pac. R.R. Corp., 312 U.S. 45, 61 S. Ct. 418, 85 L. Ed. 577 (1941); Austad v. United States, 386 F.2d 147 (9th Cir. 1967)). A trial court order granting a motion for judgment on the pleadings is reviewed de novo. See CommScope Credit Union v. Butler & Burke, LLP, _ N.C. _, _, 790 S.E.2d 657, 659 (2016) (citation omitted). “Under the de novo standard of review, the [Court] ‘considers] the matter anew[ ] and freely substitutes] its own judg- • ment for’ [that of the lower court].” Midrex Techs., Inc. v. N.C. Dep’t of Revenue, _ N.C. _, _, 794 S.E.2d 785, 791 (2016) (brackets in original) (quoting N. C. Dep’t of Env’t & Nat. Res. v. Carroll, 358 N.C. 649, 660, 599 S.E.2d 888, 895 (2004)).
Judicial estoppel is “customarily used to promote the fairness and integrity of judicial proceedings.” Whitacre P’ship, 358 N.C. at 13, 591 S.E.2d at 879. “A party is not permitted to take a position in a subsequent *511 judicial proceeding which conflicts with a position taken by him in a former judicial proceeding, where the latter position disadvantages his adversary.” Id. at 21, 591 S.E.2d at 884 (quoting Rand v. Gillette, 199 N.C. 462, 463, 154 S.E. 746, 747 (1930)). However, “a party may not be judicially estopped to assert ‘inconsistent positions with respect to issues that are only superficially similar.’ ” Id. at 16, 591 S.E.2d at 880 (quoting 18 James Wm. Moore et al., Moore’s Federal Practice § 134.30, at 134-69 (3d ed. 1997)). In other words, “judicial estoppel is limited to the context of inconsistent factual assertions.” Id. at 32, 591 S.E.2d at 890. For that reason, in order to invoke judicial estoppel, a party must show that (1) the opposing party “advanced an inconsistent factual position in a prior proceeding, and (2) the prior inconsistent position was adopted by the first court in some manner.” AXA Marine & Aviation Ins. (UK) Ltd. v. Seajet Indus. Inc., 84 F.3d 622, 628 (2d Cir. 1996); see also Wight v. BankAmerica Corp., 219 F.3d 79, 90 (2d Cir. 2000) (same). In other words, “there must be a true inconsistency between the statements in the two proceedings”; “[i]f the statements can be reconciled there is no occasion to apply an estoppel.” Simon v. Safelite Glass Corp., 128 F.3d 68, 72-73 (2d Cir. 1997) (citing, inter alia, AXA Marine & Aviation, 84 F.3d at 628). As a general proposition, “a trial court’s application of judicial estoppel is reviewed for abuse of discretion.” Whitacre P’ship, 358 N.C. at 38, 591 S.E.2d at 894 (citation omitted). “Where the essential element of inconsistent positions is not present, it is an abuse of discretion to bar plaintiff’s claim on the basis of judicial estoppel.” Estate of Means ex rel. Means v. Scott Elec. Co. Inc., 207 N.C. App. 713, 719, 701 S.E.2d 294, 299 (2010) (citation omitted). Thus, the issues before us in this instance are: (1) whether the allegations and admissions in the parties’ pleadings, considered in the light most favorable to Hartford, demonstrate that Hartford took inconsistent positions in the related federal case and in this case; and (2) whether the trial court abused its discretion in invoking judicial estoppel to bar the assertion of Hartford’s claims. In view of my belief, after reviewing the allegations and admissions in the pleadings in the light most favorable to Hartford, that Hartford has not made inconsistent assertions in the related federal case and this case, I believe that the trial court erred by dismissing Hartford’s claims on judicial estoppel grounds.
In the related federal action, Helm asserted claims against United Bank for (1) fraudulent and deceptive conduct, including the intentional misrepresentation and concealment of material facts from Helm, that constituted unfair and deceptive trade practices; (2) fraud, based upon representations made to Helm by Michael Schomick in a February 2008 letter, by Judy Tackett in July 2009 telephone conversations, and by *512 Kermin Fleming in both a voice mail and telephone conference in July 2009; (3) fraud in the inducement based upon these same representations to Helm; (4) unjust enrichment; and (5) negligent misrepresentation based upon these same representations to Helm.
On 7 June 2013, United Bank filed a motion in the related federal action seeking to have Hartford substituted for Helm as the party plaintiff on the grounds that Hartford, which owned any judgment that Helm might obtain, was the real party in interest. At a hearing held for the purpose of considering various pretrial motions held on 3 July 2013, United States District Judge N. Carlton Tilley, Jr., expressed concern that “Hartford would have some right to come along at a later time and say we’re not bound by [the federal court judgment], we own this, and we think Helm should have pursued a different course, we don’t think they waived anything that would [a]ffect us.” In response, counsel for Hartford informed the federal district court that: (1) “Hartford has no objection with this case moving forward without Hartford as a named party to this litigation”; and (2) “Hartford... will not seek to collaterally attack any judgment entered in this action.” (Emphases added.) In other words, as the italicized statements make clear, the representations made by Hartford’s counsel to the federal district court were strictly limited to the issues currently before that forum. Shortly thereafter, Hartford’s counsel told United Bank’s counsel in an e-mail that the representations that she had made to the district court in the federal proceeding did not include any separate claims that Hartford might have against United Bank. More specifically, Hartford’s counsel informed counsel for United Bank that, while it “will not seek to re-litigate those claims brought by HELM Builders in” the federal action, “Hartford did not represent to the [federal district court] that it was waiving and/or in any way releasing any claim that it may possess against United Bank from this date until the end of time, whether known or unknown.”
About three months after the conclusion of the federal trial, in which the jury returned a verdict in United Bank’s favor, Hartford asserted claims against United Bank for (1) fraud, based upon a contention that the 22 February 2008 letter contained representations and omitted material facts that had the effect of making that letter false and misleading so as to deceive Hartford; (2) fraud in the inducement, based upon a contention that United Bank had induced Hartford to provide bonding services for the Hotel Indigo project based upon misleading representations and omissions to Hartford associated with the 22 February 2008 letter; (3) unfair trade practices, based upon the misleading representations and omissions to Hartford associated with the 22 February 2008 *513 letter; and (4) negligent misrepresentation, based upon a contention that United Bank had failed to exercise ordinary care in its communications with Hartford. In determining that Hartford is judicially estopped from asserting these claims based upon the representations that it had made to the district court during the related federal case, the majority has failed to analyze the claims that Hartford has asserted against United Bank in order to ascertain whether they are the same as those that Helm asserted against United Bank. When such an analysis is undertaken, it is clear to me that the claims that Hartford seeks to assert against United Bank in this case are not identical to the claims that Helm asserted against United Bank in the related federal action.
In seeking relief from United Bank, Hartford alleged that, “[p]rior to the issuance of the performance and payment bond,” it “required verification and written assurance from the Bank that the Bank had allocated funds from the Construction Loan sufficient to cover and pay to HELM Builders the base scope of the Shrijee Contract—i.e. $13,050,000.00” and that, “prior to February 22, 2008, the Bank knew and understood that HELM Builders’ surety had refused to issue the performance and payment bond in the amount of $13,050,000.00 for the Hotel Indigo Project based solely upon the Bank’s issuance of the Bank Commitment Letter” and that Hartford ‘‘required the Bank to provide assurances that it had allocated funds from the Construction Loan sufficient to cover the base scope of the Shrijee Contract—i.e., $13,050,000.00 in order for Hartford to issue the performance and payment bond.” In light of that understanding, United Bank provided a letter from Michael E. Schomick, Jr., an Executive Vice President, to Scott McAllister, who served as Helm’s President, dated 22 February 2008 in which Mr. Schomick stated that:
This letter is to confirm that the financing is available for the Hotel Indigo, Durham, NC project. The minimum of $13,050,000 has been allocated for the contract amount to Helm Builders, LLC for the construction of the project. Direct funding to Helm Builders LLC is contingent upon Shrijee LLC authorization, draw percentages must be commensurate with completion percentage and the standard lien waivers from both Helm and all subcontractors including vendors. Inspections & payment authorizations willbedeterminedandconductedbyathird-party architect.
We understand this letter is to be used to release the Payment and Performance bonds for the construction of this project.
*514 According to Hartford, United Bank “provided the February 2008 Bank Letter to Har[t]ford, in care of HELM Builders, to obtain Hartford’s issuance of the requested performance and payment bonds for the construction of the Hotel Indigo Project.” However, as Hartford discovered during the trial of the related federal action, United “Bank had not allocated at least $13,050,000 of the Construction Loan for the Shrijee Contract;” “never intended to allocate at least $13,050,000.00 of the Construction Loan for the Shrijee Contract;” and did not “include within the February 2008 Bank Letter sufficient information to put Hartford on notice that the Bank was not financing one hundred percent (100%) of the construction costs for the Hotel Indigo Project” or “to put Hartford on notice that the Bank had not allocated at least $13,050,000 of the Construction Loan for the Shrijee Contract.” Hartford contended that it “would not have issued both the Payment and Performance Bonds absent the Bank’s express representations to Hartford, set forth in the February 2008 Bank Letter.” As a result, Hartford alleged that it was entitled to recover damages from United Bank for fraud, fraud in the inducement, unfair and deceptive trade practices, and negligent misrepresentation.
The essence of the claim that Hartford seeks to assert against United Bank is that Hartford could have reasonably understood the statements contained in the 22 February 2008 letter to indicate that the bank had committed sufficient funds from the construction loan to pay for the construction of the Hotel Indigo project; that no such commitment had, in fact, been made; and that Hartford would not have provided bonding services for the project had it understood that the bank had not allocated sufficient funds from the construction loan to pay for the construction of the Hotel Indigo. Although Helm had asserted that the 22 February 2008 letter contained misrepresentations as to Helm and that Helm would not have commenced construction had it known that sufficient funds had not been committed from the construction loan to pay the costs that Helm anticipated occurring in connection with the construction of the Hotel Indigo, I do not believe that there is any inconsistency between a representation to a federal district court that Hartford did not intend to collaterally attack or otherwise seek to relitigate claims based upon representations that were allegedly false as to Helm, which Hartford owned by virtue of an assignment that it had received from Helm, and the assertion of claims based upon misrepresentations that were alleged to have been made directly to Hartford, particularly given that this issue is being resolved at the pleading stage without the benefit of further factual development. As a result, given that the statements made by Hartford to the federal district judge prior to the federal trial *515 were limited to a commitment that Hartford would not attempt to reliti-gate the claims that Helm had asserted against United Bank and given that the claims that Hartford has asserted against United Bank rest upon alleged misrepresentations made to Hartford rather than to Helm, I do not believe that the undisputed information in the present record provides any basis for a determination that Hartford’s representations to the federal district court conflict with the position that Hartford has taken in this case. As a result, since the allegations set out in the parties’ pleadings, viewed in the light most favorable to Hartford, provide ample justification for a determination that Hartford did not make inconsistent representations in the related federal case and in this case, I respectfully dissent from the Court’s decision to uphold the dismissal of Hartford’s claims against United Bank on judicial estoppel grounds.[1]
Justices HUDSON and BEASLEY join in this dissenting opinion.

. In view of the fact that the Court has not reached the issue of whether Hartford is precluded from asserting its claims against United Bank on collateral estoppel or res judicata grounds, I express no opinion concerning the maimer in which that issue should be decided.